IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL and TAMMY ARRINGTON,     )
                                 )
         Plaintiffs,             )
                                 )
v.                               )     CIVIL ACT. NO.  2:14cv209-CSC
                                 )              (WO)
STATE FARM INS. CO., *et al.*,   )
                                 )
         Defendants.             )

## MEMORANDUM OPINION AND ORDER

Before the court is the Plaintiffs' motion to remand (Doc. 9).  Having considered the motion, the court concludes that the motion is due to be granted.

### I.    Standard of Review

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). This court is "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).  Therefore, a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* "at the earliest possible stage in the proceedings." *Id*. at 410. "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at

377.  Thus, when a case is removed to federal court, the "heavy" burden of establishing the existence of subject matter jurisdiction rests on the removing party.  *Burns*, 31 F.3d at 1095.  All questions or doubts as to subject matter jurisdiction are to be resolved in favor of returning the matter to state court.  *Burns*, 31 F.3d at 1095.

## II.  Discussion

### A.    Procedural History and Issues Presented

On August 29, 2013, Michael and Tammy Arrington filed a complaint in the Circuit Court of Pike County, Alabama, asserting state law claims against State Farm Insurance Companies, State Farm General Insurance Company, and State Farm Fire and Casualty Company (collectively, "State Farm").  The Arringtons also named State Farm insurance agent Danny Graham as a Defendant.  (Doc. 1-10 ¶ 5).  The Arringtons and Defendant Graham are Alabama citizens.  (Doc. 1-9 ¶¶ 1, 5).  The State Farm defendants are foreign corporations doing business in Alabama.  (Doc. 1-9 ¶ ¶ 2-4).

In their complaint, the Arringtons allege the following facts: Graham sold the Arringtons a State Farm homeowners' insurance policy and represented that State Farm would provide coverage if the Arringtons' home suffered a covered peril.  (Doc. 1-9 ¶¶ 14-15).  In December 2012, a storm damaged the Arringtons' home, causing the roof to leak.  (Doc. 1-9 ¶¶ 17-18).  The Arringtons submitted a claim for State Farm to pay for home repairs, and State Farm paid only a portion of the claim, refusing to pay the rest.  (Doc. 1-9 ¶¶ 19-21).  The Arringtons allege that, as a result, they

2

have been injured and damaged as follows: their home has been damaged, they have spent a great deal of money on premium payments for a policy of insurance that did not provide full coverage.  They have been caused to suffer and continue to suffer mental anguish and emotional distress.  They have been otherwise injured and damaged.

(Doc. 1-9 ¶ 25).

The Arringtons assert claims for breach of contract, bad faith refusal to pay an insurance claim and bad faith failure to investigate an insurance claim, fraud, negligence, wantonness, and negligent or wanton hiring, training, or supervision.  In addition to compensatory damages for their alleged injuries, the Arringtons also seek punitive damages.

On March 24, 2014, the Defendants filed a notice of removal.  The Defendants contend that the Arringtons' February 28, 2014 deposition testimony revealed that they cannot arguably prove certain facts necessary to their claims against Graham, the only non-diverse Defendant.  (Doc. 1).  Accordingly, the Defendants argue that Graham was fraudulently joined and that diversity of citizenship exists in this case for purposes of establishing subject matter jurisdiction.  *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) ("'When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court.'" (quoting *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006)).

However, to establish diversity jurisdiction, the removing party must not only demonstrate that the properly-joined parties are completely diverse, but, where the amount

in controversy is not evident from the face of the complaint, the removing party must also demonstrate that the amount in controversy exceeds the $75,000 jurisdictional minimum set by 28 U.S.C. § 1332.[1]   *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir.2010); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1207 (11th Cir.2007).

The Defendants have submitted a contractors' estimate for repairs to the exterior of the Arringtons' home in the amount of $34,680.00. (Doc. 1-7). The Defendants have presented no evidence as to the probable value of the remaining claims for damages.[2] (Doc. 1-7). Instead, relying on *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010), the Defendants argue that evidence establishing the jurisdictional amount is not necessary where it is "'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional requirement, even when 'the complaint does not claim a specific amount of damages.'" *Roe*, 613 F.3d at 1061 (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)). The Defendants argue that, under *Roe*, this court can simply apply "judicial experience and common sense" to the bare allegations of the complaint regarding the rest of the Arringtons' damages and determine that, more likely than not, when combined with the $34,680.00 cost of exterior home repairs, the remaining damages are

---

[1]Because the Defendants have not met their burden to establish that the amount in controversy exceeds $75,000, the court pretermits consideration of whether Graham was fraudulently joined.

[2]The court notes that the contractor's estimate states that various electrical items in the home had been damaged in the amount of $1,959.00. (Doc. 1-7 p.2). The Defendants do not appear to rely on this figure, and it is unknown whether State Farm reimbursed the Arringtons for these damages. However, the Defendants have not demonstrated that the jurisdictional minimum is satisfied even if the amount in controversy includes $1,959.00 in damage to electronics and appliances.

sufficient to meet the jurisdictional minimum.

**B.    The Applicable Standard For Reviewing the Allegations in the Initial Complaint Regarding the Amount in Controversy**

This case is somewhat unusual in that the Defendants argue that removability first became unequivocally apparent upon receipt of the Arringtons' deposition testimony, which allegedly establishes complete diversity, but that, other than the cost of home repairs, a "common sense" review of the bare facial allegations of the complaint establishes that, more likely than not, the amount in controversy has been met.  To the extent that the Defendants urge this court to draw inferences from the bare allegations of the complaint to determine whether the jurisdictional amount has been met, the court has considered two apparently-conflicting Eleventh Circuit cases – *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), and *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010) – and concludes that, under the facts of this case, *Roe* supplies the standard of review.

The Defendants cite *Exum v. State Farm & Fire Cas. Co.*, 821 F. Supp. 2d 1285 (M.D. Ala. 2011) for the proposition that, "'where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy *more likely than not* exceeds the jurisdictional requirement.'" 821 F. Supp 2d at 1291 (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356–57 (11th Cir. 1996), overruled on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000)).  However, as the court in *Exum* pointed out, "[t]he *Lowery* case appears to have elaborated a different and more rigorous burden than the

5

preponderance of the evidence burden of *Tapscott*." *Id*.  In *Exum*, the court applied the *Lowery* standard, not the *Tapscott* standard.  *Id*. at 1293-94.

In *Lowery*, 483 F.3d 1184, relying on *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) and *Huffman v. Saul Holdings*, *LP*, 194 F.3d 1072, 1078 (10th Cir. 1999), an Eleventh Circuit panel held that, "in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Lowery*, 483 F.3d at 1213 & n.63.[3] Although *Lowery* did not absolutely hold that the "unequivocal statement" in the "initial complaint or later received paper" must specify the damages at issue in terms of a dollar amount, *Lowery* does state that, "generally" and "ordinarily," when the plaintiff does not "assign a specific

---

[3]*Bosky* and *Huffman* do *not* support *Lowery's* assertion that, no matter when a case is removed, subject matter jurisdiction must be shown by a document received from the plaintiff that contains an "unequivocal," "unambiguous statement that clearly establishes" federal jurisdiction. *See Pretka*, 608 F.3d at 765 (noting that *Lowery* "misreads" *Bosky* and *Huffman* as applying both to removals based on the initial complaint and removals based on the receipt of some subsequent document). Rather, those cases hold that, when federal subject matter jurisdiction cannot be ascertained from the face of the complaint, the *time for removal* begins to run when the defendant receives from the plaintiff another document (*other than* the initial complaint) that clearly and unequivocally and unambiguously places the defendant on notice that the case is or has become removable.

The timeliness of removal is a procedural issue that presents a separate question from the existence of subject matter jurisdiction.  *Pretka*, 608 F.3d at 751. Thus, not only does *Lowery* improperly conflate removals based on the initial complaint with removals that are predicated on some subsequent document received from the plaintiff, *Lowery* also improperly conflates procedural and jurisdictional questions. Needlessly confusing the burden of proof for establishing jurisdiction and the level of specificity required before a document will trigger the running of time limit for removing a case creates a potentially unworkable standard whereby subject matter jurisdiction must be shown by a preponderance of unequivocally clear and certain evidence. *Cf. Lowery*, 483 F.3d at 1211 ("[I]f a defendant can only carry the burden of establishing jurisdiction under these circumstances, then the defendant could have satisfied a far higher burden than preponderance of the evidence. Regardless, our precedent compels us to continue forcing this square peg into a round hole.").

amount to the damages sought in [the] complaint," the complaint itself will not be sufficient to establish jurisdiction.  *Id*. n.63.  Thus, under *Lowery*, remand is required unless "the jurisdictional amount is either stated on the face of the documents" on which removal is predicated, "or readily deducible from them," and satisfying this requirement presents "a far higher burden than preponderance of the evidence."  *Id*. at 1211.

Despite being soundly criticized by a subsequent Eleventh Circuit panel in *Pretka*, 608 F.3d 744, *Lowery* has not been overruled.  *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc").  However, *Lowery* is distinguishable from this case insofar as it suggests that the initial complaint must "assign a specific amount to the damages sought" or that the amount in controversy must be unambiguously "readily discernable" from the initial complaint to a clear and certain degree.

In *Lowery*, removal was not predicated on the initial complaint, but on an amended complaint that did not contain a specific claim for damages.   Thus, as noted in *Pretka*, *Lowery* "did not address the particular type of removal" where, as here, "'the actual facts supporting federal jurisdiction remain unaltered from the initial pleading, but their existence has been *manifested* only by later papers, revealing the grounds for removal for the first time.'" *Pretka*, 608 F.3d at 760 n.16.   "'[W]hatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced.'" *Id*.

7

at 762 (quoting *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003)).

Moreover, in *Pretka*, the Eleventh Circuit noted that *Lowery's* reasoning regarding the requirement of an "unambiguous statement that clearly establishes jurisdiction" "is pegged to language . . . in § 1446(b)" providing that, where the initial complaint does not provide the basis for removal, the time for removal begins to run from "'receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.'" *Pretka*, 608 F.3d at 762-63 (quoting  28 U.S.C. § 1446(b)(3)); *see also Pretka*, 608 F.3d at 763 (citing *Bosky* citing in turn § 1441(b))*; Bosky*, 288 F.3d at 211 (citing § 1441(b) with respect to the requirement of an "unequivocally clear and certain" statement of jurisdiction); *Huffman*, 194 F.3d at 1078 (same).  By its terms, this statutory language does not apply to the initial complaint, but to the subsequent document received from the plaintiff that first places the defendant on notice that the case is removable. *Pretka*, 608 F.3d at 760-61. Therefore, as the *Pretka* panel recognized, *Lowery's* statements are incorrect dicta with respect to removals based on the initial complaint.  *Pretka*, 608 F.3d at 762-67.

The present case, like *Lowery* and unlike *Pretka*, was removed pursuant to the provisions of § 1446(b) that allow for removal on the basis of some document received from the plaintiff, other than the initial complaint, "from which it may first be ascertained that the case is one which is or has become removable."  28 U.S.C. § 1446(c). However, *unlike* in *Lowery*, in this case, the document that (allegedly) unequivocally notified the Defendants of

8

the existence of federal jurisdiction was not a document establishing the amount in controversy, but a document indicating that Graham was fraudulently joined and, therefore, that complete diversity exists. The Defendants essentially argue that (other than the cost of home repairs) the amount in controversy has *always* been reasonably inferrable from the bare allegations of the initial complaint.

Therefore, the statutory requirement that jurisdiction be "ascertainable" is applicable to the document establishing fraudulent joinder, but inapplicable to the allegations in the initial complaint pertaining to the amount in controversy.  *Pretka*, 608 F.3d at 758 n.14 (noting that the statutory language at issue "refers to a document from which removability must first be 'ascertained'").  Accordingly, *Lowery's* requirement of an "unambiguous statement that clearly establishes jurisdiction," which "is pegged to" that same statutory language, *Pretka*, 608 F.3d at 762-63, is dicta insofar as it pertains to this court's review of the bare allegations in the initial complaint to determine whether the amount in controversy is satisfied.   Any other conclusion would require that, in cases of fraudulent joinder where the amount in controversy has been reasonably deducible all along from the face of an initial complaint, defendants who subsequently receive a document clearly establishing complete diversity nevertheless would be powerless to remove the case unless and until they receive yet another document that clearly and unequivocally states the dollar amount in controversy. Such a result violates two principles: first, the principle that a defendant's right to remove must not be subject to the caprice of an artful plaintiff, *Pretka* at 766, and, second, the rule

that a defendant must initiate removal as soon as the case assumes the shape of a removable case, *id*. at 759.

In *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010), citing *Tapscott*, *supra*, the Eleventh Circuit held that, when a case is removed on the basis of an initial complaint that does not plead a specific amount of damages, the removing defendant is required to show by a preponderance of the evidence that, more likely than not, the amount in controversy exceeds the jurisdictional minimum.  *Roe*, 613 F.3d at 1061; *see also Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) (citing *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir.2001)) (same); *Tapscott*, 77 F.3d at 1356–57.  Under *Roe*, if a defendant does not provide evidence of the amount in controversy, but alleges that removability is apparent from the face of the initial complaint, "the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden."  *Roe*, 613 F.3d at 1061.  "In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought."  *Id.* Instead, when the initial complaint does not include an unambiguous demand for a specific amount of damages, the removing defendant may satisfy its burden to establish subject matter jurisdiction, if, when the specific allegations of the complaint are viewed in light of "judicial experience and common sense," it is apparent from the face of the complaint that, "more likely than not," the case satisfies the jurisdictional minimum.  613 F.3d at 1061-62.

10

Because the Defendants in this case allege that the jurisdictional amount is established by the bare allegations of the initial complaint, the court concludes that, in this case, determining whether the jurisdictional amount has been met is governed by *Roe's* "preponderance of the evidence" or "more likely than not" standard, 613 F.3d at 1061, and not by any requirement in *Lowery* that the initial complaint must clearly, unequivocally, or unambiguously state the amount in controversy.[4]   Therefore, despite the fact that this case was not removed within 30 days of receipt of the initial complaint, the court will consider whether the specific allegations of the initial complaint, and all reasonable inferences[5] to be drawn from those allegations, are sufficient to establish that, "more likely than not," the amount in controversy is sufficient.

## C.   Discussion

Although *Roe* recognizes that "judicial experience and common sense" may support "reasonable inferences" drawn "*from the pleadings*" to determine whether "*the case stated in [the] complaint* meets federal jurisdictional requirements," nothing in *Roe* permits the court to indulge in speculation or fill empty gaps in the plaintiff's factual averments with unfounded assumptions about what the evidence may show.  613 F.3d at 1061 (emphasis

---

[4]In any event, in this case, *Roe* does not require a different result that *Lowery*. The standard set by *Roe*, which allows for reasonable inferences, deductions, and extrapolations, 613 F.3d at 1058, is decidedly less than the "clear and unequivocal" standard mentioned in *Lowery*.  Because the complaint is insufficient to satisfy *Roe*, it is most certainly insufficient under the standard suggested by *Lowery*.

[5]The court notes that, although *Roe* "permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable," neither *Roe* nor *Lowery* permit a court to draw unsubstantiated inferences about the amount in controversy, and, where competing factual inferences may be fairly drawn from the allegations of the complaint, neither case permits a court to indulge the inferences least favorable to remand.  *Roe*, 613 F.3d at 1061-62.

added).  "Judicial experience and common sense" are useless for making "*reasonable*" deductions, inferences, and extrapolations when the complaint is devoid of any averments from which to deduce, infer, or extrapolate.   A reasonable inference "is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist.'" (quoting *Siewe v. Gonzales*, 480 F.3d 160, 168 (2d Cir. 2007). "[W]ithout facts or specific allegations, the amount in controversy" can be determined "only through speculation—and that is impermissible." *Pretka*,  608 F.3d at 753-54 (citing *Lowery*, 483 F.3d at 1209).  Moreover, it is axiomatic that, on a motion to remand, all questions or doubts as to subject matter jurisdiction are to be resolved in favor of returning the matter to state court, *see Burns*, 31 F.3d at 1095; thus, to the extent that competing inferences may be drawn from the specific factual allegations of the complaint, the court must indulge those inferences most favorable to remand.

On the face of their complaint, in addition to the cost of exterior home repairs, the Arringtons seek compensatory damages to recover "a great deal of money on premium payments for a policy of insurance that did not provide full coverage."  (Doc. 1-9 ¶ 25). However, in the court's "judicial experience," the definition of "a great deal of money" varies widely from case to case and plaintiff to plaintiff, and, without some specific allegation in the complaint indicating *how much* money was spent on policy premiums, there is no basis for drawing any inference whatsoever on that issue.   Likewise, the complaint contains no specific allegations from which one could draw any reasonable inference regarding the extent of the Arringtons' mental anguish, emotional distress, or unspecified

"other" damages.  (Doc. 1-9 ¶ 25).  In the court's "judicial experience," mental anguish and emotional distress damages in cases such as this vary widely depending on the circumstances, and even very similar circumstances may affect different plaintiffs in different ways.  Finally, the Defendants argue that, in addition to the $34,680.00 cost of repairs to the exterior of the home, the Arringtons also seek compensation for damages to the interior of the home.  (Doc. 14 ¶ 31).  The complaint, however, includes no specifics about the location and nature of damages to the home, except to say that the storm damage caused the roof to leak.  From the sparse allegations of the complaint, it is simply not possible to determine the extent of damage, if any, to the interior of the home.  In short, the Defendants' approach to calculating the Arringtons' compensatory damages requires baseless speculation and deference to whichever assumptions are *least* favorable to remand, rather than the use of judicial experience and common sense to make reasonable deductions from specific factual allegations or evidence. This, the court cannot do. *See Kokkonen*, 511 U.S. at 377 ("It is to be presumed that a cause lies outside [the court's] limited jurisdiction); *Pretka*, 608 F.3d at 753-54 ("[W]ithout facts or specific allegations, the amount in controversy could be 'divined [only] by looking at the stars'—only through speculation—and that is impermissible.").

 In addition to compensatory damages, in conjunction with claims for bad faith failure to investigate and pay an insurance claim, fraud, wantonness, and wanton hiring, training, and supervising of adjusters, the Arringtons also seek "an amount of punitive damages as will reflect the enormity of the wrongs committed by the Defendants and will deter the Defendants and others from committing similar wrongful acts the future."  (Doc. 1-9 p. 8).

13

Citing *Roe* and *Blackwell v. Great American Financial Resources, Inc.*, 620 F. Supp. 2d 1289, 1291 (N.D. Ala. 2009), the Defendants argue that, using judicial experience and common sense, this court can determine, based on the allegations of the complaint, that a constitutionally-permissible punitive damages award would be enough, combined with the other damages at issue, to satisfy the jurisdictional minimum.  For instance, the Defendants posit that the jurisdictional amount could be met by starting with the $34,680.00 cost of home repairs, assuming that the remaining amount of compensatory damages is at least $2,820.01, and then assuming that the amount punitive damages at issue is at least equal to the total amount of compensatory damages.  However, those assumptions are substantiated only by speculation and run contrary to the requirement that the court must presume that this case lies outside its limited jurisdiction. *Kokkonen*, 511 U.S. at 377.  This court's task is not to merely decide whether the punitive damages at issue in this case could *conceivably* satisfy the minimum jurisdictional requirement, but whether it is *more likely than not* that they do.  *See Roe*, 613 F.3d at 1061.  Moreover, the constitutionally-permissible ratio of punitive damages to compensatory damages is only one factor in determining the reasonableness of a potential punitive-damages award and is determined in light of the facts of each individual case, not by applying a rigid mathematical formula.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003); *Pensacola Motor Sales, Inc. v. Daphne Automotive, LLC*, __ So.3d__, __, 2013 WL 6360967 at *14 (Ala. 2013).

   "'[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct.'" *State Farm Mut. Auto. Ins. Co.*

*v. Campbell*, 538 U.S. 408, 419 (2003) (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996)); *see also Roe*, 613 F.3d at 1065 (holding that, under Alabama law, "in assessing punitive damages, the worse the defendant's conduct was, the greater the damages should be."). Thus, in *Roe*, the court noted that the "factors used to determine the value" of a wrongful death claim for punitive damages "can generally be evaluated using the complaint's allegations regarding the defendant's behavior." *Roe*, 613 F.3d at 1064.  In *Roe*, the complaint included specific, non-conclusory allegations that the defendant fully knew the potential danger that its conduct posed and that the danger was preventable with ordinary care, but "did not even attempt to take [preventative] measures," thus causing the plaintiff's death and "endangering the lives of thousands of people." *Roe*, 613 F.3d at 1066; *see also Pensacola Motor Sales* at *16 (noting that the degree of reprehensibility of the defendant's conduct may be guaged by the degree to which the defendant was aware of the hazards his conduct posed, the degree to which the defendant recklessly or indifferently endangered others, and whether the defendant's conduct was merely an isolated incident).  Here, however, although the plaintiffs clearly contend that the defendants' allegedly wanton, reckless, bad faith, and/or fraudulent conduct was reprehensible enough to merit some award of punitive damages, the complaint contains no specific factual allegations that could provide any indication of the *degree* of reprehensiblility of that conduct.

Further, unlike in *Blackwell*, which is not controlling precedent, in this case there are no allegations that the Defendants were aware that the Arringtons were particularly financially vulnerable or that the Defendants engaged in a long-standing pattern of

misconduct. *Cf. Blackwell*, 620 F.2d at 1291 (noting that the complaint alleged a conspiracy "that continued for more than two years and, in the process, syphoned away much of an elderly man's life savings under false pretenses"); *Akins Funeral Home, Inc., v. Miller*, 878 So. 2d 267, 279 (Ala. 2003) (recognizing that economic damage inflicted on a financially-vulnerable plaintiff may indicate a greater degree of reprehensibility of misconduct and support a larger punitive-damages award); *Pensacola Motor Sales* __ So.3d __, ___, 2013 WL 6360967 at *16 (Ala. 2013) (holding that, in determining the reprehensibility of a defendant's conduct, the court must consider whether the defendant's conduct was an isolated incident or part of a pattern of misconduct, the duration of the conduct, and the plaintiff's financial vulnerability).

Further, despite the lack of any factual detail in the complaint indicating the extent of compensatory damages at issue or the reprehensibility of the Defendants' alleged conduct, and despite the fact that the Arringtons have submitted to depositions and discovery has been ongoing in the case, the Defendants have not submitted any evidence to support their assertion that the value of the Arringtons' claims likely exceeds the jurisdictional minimum. *Pretka*, 608 F.3d at 752 ("[I]t would be 'impermissible speculation' for a court to hazard a guess on the jurisdictional amount in controversy 'without the benefit of any evidence [on] the value of individual claims.'" (quoting *Lowery*, 483 F.3d at 1220)).

In the absence of evidence or specific factual allegations in the complaint upon which to reasonably determine the extent of the Arringtons' compensatory and punitive damages (other than the cost of home repairs), the court cannot simply assume that the amount in

16

controversy in this case exceeds the jurisdictional minimum.  "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction *should not be divined by looking to the stars*."  *Pretka*, 608 F. 3d at 753 (quoting *Lowery*, 483 F.3d at 1215) (emphasis in *Pretka*).

Accordingly, this case must be remanded.

## CONCLUSION

Accordingly, it is

**ORDERED** that the motion to remand (Doc. 9) be and is hereby **GRANTED** and that this case is hereby **REMANDED** to the Circuit Court of Pike County, Alabama.

The Clerk of Court is **DIRECTED** to take the action necessary to accomplish the remand of this case to the Circuit Court of Pike County, Alabama.

Done this 1st  day of July, 2014.

/s/Charles S. Coody

CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

17